RECEIVED
DOC. WESTERN DISTRICT OF L
TONY R. MOORE, CLERK
4 / 6 / 15
JT

UNITED STATES DISTRICT COURT                    b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

JIM HOWARD,                          CIVIL ACTION
        Petitioner                   SECTION "P"
                                     NO. 1:14-CV-00514
VERSUS

WARDEN, LOUISIANA STATE              JUDGE DEE D. DRELL
PENITENTIARY,                        MAGISTRATE JUDGE JAMES D. KIRK
        Respondent

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed

by pro se petitioner Jim Howard ("Howard") pursuant to 28 U.S.C. §

2254 on March 10, 2014 (Doc. 1) and amended on March 28, 2014 (Doc.

4). Howard is contesting his 2003 conviction by a jury in the

Louisiana 28th Judicial District Court in LaSalle Parish on one

count of conspiracy to distribute cocaine (Doc. 4). Howard was

sentenced to life imprisonment as a habitual offender (Doc. 4).

Howard raises the following issues for review in his petition:

1. Whether the state court erroneously admitted the
highly inculpatory hearsay statements of Sharon Smith and
Earnest Kicker Jones, such hearsay being the only direct
evidence of a conspiratorial agreement between them and
Howard?

2. Whether the mandatory life sentence for Howard's act
of conspiring to sell two rocks of crack cocaine to
police officers who sought him out for that purpose is
unconstitutionally excessive notwithstanding Howard's two
prior convictions?

3. Whether the circumstantial evidence presented at trial
violated due process and is insufficient to support a
verdict of guilty for conspiracy to distribute cocaine?

4. Whether the prosecutor's intimidation or threats of prosecution dissuaded a potential defense witness from testifying and infringed upon Howard's due process rights under the Sixth and Fourteenth Amendment to a fair trial.

5. Whether prosecutorial misconduct occurred when (1) the prosecutor vouched for the credibility of the state's witness, and (2) the prosecutor improperly commented on Howard's failure to present witnesses to testify in violation of the Sixth Amendment right to a fair trial?

6. Whether the multiple bill proceedings were fundamentally unfair in violation of the due process clause of the Fourteenth Amendment when the trial court failed to determine whether the guilty plea Howard admitted to was constitutionally obtained?

7. Whether the trial court violated Howard's due process right to a fair trial when it failed to instruct the jury when it retired during the arguing of objections, lunch breaks, and end of trial for the day?

8. Whether Howard was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution?

The Respondent answered the petition (Doc. 24) and argues that Howard failed to exhaust his state court remedies as to the claims in Ground Number 5, which allege prosecutorial misconduct.

<u>Facts</u>

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal, at <u>State v. Howard</u>, 2004-499 (La. App. 3d Cir. 11/17/04), 888 So.2d 375, writ den., 2004-KO-3216 (La. 4/8/05), 899 So.2d 13, are as follows:

"On January 11, 2001, Carla Whitstine, a detective with LaSalle Parish Sheriff's Office; Karlyon Holston, a deputy with Rapides Parish Sheriff's Office; Sharon Smith, a confidential informant; and two undercover agents, working with the Metro Narcotics Task Force were cruising in their vehicle looking to set up a drug

2

purchase. At approximately seven o'clock in the evening, they encountered the Defendant, Mr. James Howard, Jr., standing in front of a red van in a convenience store parking lot. Smith got out of the vehicle and approached him. When she returned to the vehicle, she told the agents that he wanted to know what they wanted. She testified that she went back and told him that her friends wanted two rocks of crack cocaine.

"A few minutes later, Earnest 'Kicker' Jones walked up to the vehicle and said that Howard wanted to know what they wanted. The agents told Jones they wanted two rocks of crack cocaine. After a brief period, Jones returned and told the agents to follow Howard in their vehicle because he did not want to do business in front of the store. All three witnesses testified that they saw Howard get into the red van. Jones got into his vehicle, and the two vehicles followed the red van down the road.

"Eventually, the undercover agents and Smith saw the red van parked next to Jones' vehicle, then the van left the scene. Not sure of what was happening, the undercover agents and Smith drove past Jones' vehicle. Shortly afterwards, Jones signaled the agents over and gave them two rocks of crack cocaine in exchange for forty dollars. He told them that if they wanted more drugs, to come to him, that Howard had 'hooked him up.'

"Six months later, officers arrested Howard in his home. The State charged him with two counts of conspiracy to distribute a Schedule II controlled dangerous substance, in violation of La.R.S. 14:26, 40:964(A)(4) and 40:967(A)(1), and two counts of distribution of a Schedule II controlled dangerous substance, in violation of La.R.S. 40:964(A)(4) and 40:967(A)(1).

"On June 20, 2003, a jury, deadlocked on the other charges, found Howard guilty of one count of conspiracy to distribute a controlled dangerous substance. On November 5, 2003, the trial court sentenced him to fifteen years at hard labor and ordered him to pay court costs.

"On June 24, 2003, the State filed a habitual offender bill against Howard. The trial court found him guilty, vacated the previously imposed sentence, and imposed life imprisonment pursuant to La.R.S. 15:529.1."

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Exhaustion

The exhaustion of state remedies doctrine, codified in the federal habeas statute, 28 U.S.C. §2254, reflects a policy of federal-state comity. Stewart v. Martinez-Villareal, 523 U.S. 637, 118 S.Ct. 1618, 1621-22 (1998), citing Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971). A federal habeas corpus petitioner must have provided all state courts that could review the matter with a fair opportunity to review the substance of all of his federal habeas claims before a federal court will review the claims. The mere fact that a federal petitioner's case has been through the state courts is not enough. A federal petitioner must have presented the state courts with the same claims he urges upon the federal courts. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 2554 (1991); Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 277 (1982); Picard, 404 U.S. at 275-276, 92 S.Ct. at 512.;

4

Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999).

Because a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, a district court must dismiss habeas petitions containing both unexhausted and exhausted claims. Stewart, 118 S.Ct. at 1622, citing Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205 (1982). See also, 28 U.S.C. § 2254, Rule 4; Coleman, 501 U.S. at 73, 111 S.Ct. at 2554; Resendez v. McKaskle, 722 F.2d 227, 231 (5th Cir. 1984). The petitioner then has the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court. Rose, 455 U.S. at 510, 102 S.Ct. at 1205.

The State contends that Howard failed to exhaust his claims as to prosecutorial misconduct. However, Howard's submissions show that Howard exhausted those claims by presenting both prosecutorial misconduct claims to the Louisiana Supreme Court on post-conviction relief (Doc. 20). Therefore, Howard has exhausted his state court remedies.

<u>Standard of Review</u>

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court will be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable.  A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable.  <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

<u>Law and Analysis</u>

<u>Ground 1 - Hearsay Statements</u>

First, Howard contends the state court erroneously admitted the highly inculpatory hearsay statements of Sharon Smith and Earnest Kicker Jones, and alleges those hearsay statements were the only direct evidence of a conspiracy between Smith, Jones, and Howard.

First, Detective Whitstine testified that, after Smith had a brief conversation with Howard, she returned to the vehicle and told the agents that Howard wanted to know what they wanted.  Both officers testified that they, personally, did not hear this conversation between Smith and Howard.  The second statement Howard objected to at trial is the statement which Kicker Jones made, as Detective Whitstine repeated, that if the agents wanted more drugs, to come and see him (Jones) because Howard had "hooked him up." Kicker Jones did not testify, but all three witnesses, Smith, Whitstine and Holston, testified to that statement (Doc. 27, Vol. 3,

pp. 31, 36; Doc. 27, Vol. 4, pp. 35, 94-95).  State v. Howard, 888 So.2d 375, 378-379.

Mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief.  Panzavecchia v. Wainwright, 658 F.2d 337, 340 (5th Cir. 1981).  Thus, claims challenging the exclusion or inclusion of evidence based on state law do not afford a basis for federal habeas corpus relief. Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law.  In reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause.  Castillo v. Johnson, 141 F.3d 218, 222 (5th Cir.), cert. denied 524 U.S. 979, 119 S.Ct. 28 (1998), and cases cited therein.

The admission of improper evidence in a state criminal trial will constitute grounds for habeas relief if fundamental fairness was prevented thereby.  What elevates the mistake to a constitutional plane is at least two-fold.  First, the mistake must be material in the sense of a crucial, critical, highly significant factor.  Second, it must have some state complicity in it.  Shaw v. Estelle, 686 F.2d 273, 275 (5th Cir. 1982), cert. den., 459 U.S. 1215, 103 S.Ct. 1215 (1983), and cases cited therein.  Also, Hills

v. Henderson, 529 F.2d 397 (5th Cir. 1976), cert. den., 429 U.S. 850, 97 S.Ct. 139 (1976).

In the case at bar, the Court of Appeals held the first statement fell within the res gestae exception to the hearsay rule. State v. Howard, 888 So.2d at 379. The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime, if the continuous chain of events is evident under the circumstances. State v. Williams, 92-726 (La. App. 3d Cir. 2/3/93), 614 So. 2d 252, 253-54, citing State v. Kimble, 407 So.2d 693 (La. 1981). Therefore, the officers' testimony concerning Howard's statements during the commission of the offense clearly were made to further the commissioner of the offense and fall within the res gestae exception to the hearsay rule.

Since Howard has not shown that the state court decision was contrary to clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts, Howard has not proven he is entitled to habeas relief on this ground. This issue is meritless.

Ground 2 - Sentence

Next, Howard contends the mandatory life sentence for Howard's act of conspiring to sell two rocks of crack cocaine to police

9

officers who sought him out for that purpose is unconstitutionally excessive, notwithstanding Howard's prior convictions.  Howard was convicted of conspiracy to distribute cocaine and sentenced to fifteen years at hard labor (Doc. 27, Vol. 2, p. 39), then was found to be a third felony offender pursuant to La.R.S. 15:529.1(A)(3)(b) and received the mandatory sentence of life imprisonment (Doc. 27, Vol. 1, p. 18).

Federal review of state convictions is confined to the narrow standards of due process.  Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); Trussell v. Estelle, 699 F.2d 256, 259 (5th Cir.), cert. den., 464 U.S. 853, 104 S.Ct. 168, 78 L.Ed.2d 153 (1983). Moreover, in Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987), cert. den., 484 U.S. 1014, 108 S.Ct. 717 (1988), the court stated the following standard by which a federal habeas court may review a state trial court's sentencing decision:

> "Although wide discretion is accorded a state trial court's sentencing decision and claims arising out of that decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law.  If a sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounts to an 'arbitrary or capricious abuse of discretion,' or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty."

Since Howard's sentence was within the statutory limit, he cannot show the state court judge abused his discretion.

10

Therefore, this ground for relief is meritless.

Ground 3 - Conspiracy

Howard contends the circumstantial evidence presented at trial by two undercover police officers and a confidential informant was insufficient to support a verdict of guilty for conspiring with Earnest Jones to distribute cocaine, and  violated Howard's right to due process.  Specifically, Howard contends the evidence does not show that Howard conspired with Jones to have Jones resell the cocaine he bought from Howard.  Howard additionally contends that the circumstantial evidence presented at trial violated due process and is insufficient to support a verdict of guilty for conspiracy to distribute cocaine.

Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242, 117 S.Ct. 1847, (1997), citing, Jackson v. Virginia, 443 U.S. 307, 322-26, 99 S.Ct. 2781, 2791-92 (1979).   To apply this standard, the court looks to elements of the offense as defined by state substantive law. Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001).

A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence is entitled to a great deal of deference by a reviewing

court.  Marshall v. Lonberger, 459 U.S. 422, 433-35, 103 S.Ct. 843, 850-51 (1983).

In Louisiana, criminal conspiracy is defined in La.R.S. 14:26 as the agreement or combination of two or more persons for the specific purpose of committing any crime, provided however, that such an agreement or combination shall not amount to a criminal conspiracy unless, in addition to such combination or agreement, one or more of the parties does an act in furtherance of the object of the agreement or combination.  A prima facie case of conspiracy is presented by introduction of evidence which, if unrebutted, is sufficient to establish the fact of conspiracy.  State v. Johnson, 438 So.2d 1091, 1099 (La. 1983), and cases cited therein.  The elements of conspiracy must be established by direct or circumstantial evidence.  Johnson, 438 So.2d at 1099, and cases cited therein.

In the case at bar, Detective Keene (employed by the LaSalle Parish Sheriff) testified that he participated in an undercover drug operation with Detectives Husbands and Smith and confidential informant Sherry Smith (Doc. 27, Vol. 2, pp. 61-62).  Det. Keene testified that Det. Husbands, Det. Smith and CI Smith told him they had purchased two rocks of crack cocaine from Jim Howard, Jr. and Earnest "Kicker" Jones (Doc. 27, Vol. 2, pp. 63-64, 68).  Det. Smith testified that two officers from Metro Narcotics in Alexandria were also involved, Officer Whitstine and Officer

12

Holston (Doc. 27, Vol. 2, p. 87).  Det. Husbands testified that the confidential informant picked Howard out of lineup (Doc. 27, Vol. 3, p. 8).

Officer Whistine testified that she searched the confidential informant before the buy and did not find any contraband on her (Doc. 27, Vol. 3, pp. 17-18).  Officer Whitstine testified that she, Officer Holston, and CI Smith, all women, went to a convenience store in LaSalle Parish where Howard was standing next to a red van parked on the side of the store; Howard was pointed out by CI Smith (Doc. 27, Vol. 3, pp. 18-21).  Officer Whitstine testified that CI Smith spoke briefly with Howard, then returned and told the undercover officers that "Jim wants to know what ya'll want" (Doc. 27, Vol. 3., pp. 21, 25-26).  Officer Whitstine told CI Smith they wanted forty dollars worth of crack, CI Smith spoke again to Howard, then she returned to the officers' vehicle, and they moved their vehicle.  Their vehicle was then approached by Kicker Jones, who came from the direction of Howard's van; Kicker said Jim wanted to know what they what they wanted, and they replied they wanted forty dollars of crack (Doc. 27, Vol. 3, pp. 26-28).  Officer Whitstine testified that Kicker walked back to the van where Howard was sitting, spoke to Howard, then returned and said Howard did not want to do business on the store lot, so they should follow them (Doc. 27, Vol. 3, pp. 28-29).  Kicker Jones and Howard each drove their own vehicles to a secluded area of Parker

13

Street; Kicker's car pulled up against the driver's side door of Howard's van (Doc. 27, Vol. 3, p. 30). When the officers and CI Smith pulled up, the van drove off; when they stopped, Kicker went to their vehicle and handed them the cocaine, then they handed Kicker the money and Kicker said, "Jim was gonna hook him up for this and if we needed more to come back and see him;" everyone then left (Doc. 27, Vol. 3, pp. 31, 36).

The confidential informant, CI Smith, testified that she worked with law enforcement personnel, pursuant to a plea bargain agreement, when they met with Howard in front of a convenience store in LaSalle Parish (Doc. 27, Vol. 4, pp. 24-27). CI Smith testified that she spoke to Howard, who asked what the people with her wanted, reported that to the officers, then returned to Howard and told him they wanted two twenty dollar rocks, and returned to the officers' vehicle (Doc. 27, Vol. 4, pp. 27-28). The officers and CI Smith moved their vehicle to the side of the store so they could see Howard better, and Kicker Jones approached their vehicle from the direction of Howard's van and told them to follow them down the road because Howard did not want to do business in front of the store (Doc. 27, Vol. 4, pp. 28-29). CI Smith testified that Kicker and Howard left in their vehicles, with Howard leading, and they followed them to a secluded area (Doc. 27, Vol. 4, pp. 31-33). CI Smith testified that Kicker approached their vehicle again and gave Smith an envelope with the rocks in it, and said they should

see him if they wanted more because Howard was going to hook him up; then they all left (Doc. 27, Vol. 4, p. 35).

Finally, Officer Holston testified that she, Detective WHitstine and CI Smith drove to a convenience store in LaSalle Parish and saw Howard standing in the parking lot; CI Smith pointed him out (Doc. 28, Vol. 4, p. 86). Officer Holston testified that CI Smith got out of their vehicle, approached Howard, had a conversation with him, then returned to their vehicle and said Howard wanted to know what they wanted (Doc. 27, Vol. 4, p. 88). Detective Holston testified that she and Detective Whitstine each said they wanted to buy a twenty dollar rock of crack cocaine, which CI Smith told Howard then returned to their vehicle (Doc. 27, Vol. 4, pp. 88-89). Detective Holston testified that she then moved the vehicle to the side of the store where they could see the driver's side of Howard's van (Doc. 27, Vol. 4, p. 89). Detective Holston testified they were approached by Kicker, who said Howard wanted to know what they wanted, and they told him they wanted two twenty dollar rocks of crack cocaine (Doc. 27, Vol. 4, pp. 90-91). Detective Holston testified that she saw Kicker walk back to Howard's red van and speak to Howard (Doc. 27, Vol. 4, p. 91). Kicker then returned to them and said they needed to follow him down the road because Howard did not want to do business in the parking lot with so many people there (Doc. 27, Vol. 4, p. 91). Detective Holston testified that Kicker and Howard got into their

cars and drove to Parker Lane, a secluded area where it was dark;
Kicker had pulled up beside the driver's side door of Howard's red
van (Doc. 27, Vol. 4, pp. 91-93). Officer Holston testified that,
when they pulled up, Howard's red van drove away, then Kicker
approached their vehicle and told them Howard was going to "hook"
him up for it, Kicker gave them the cocaine and took their money,
then they all left (Doc. 27, Vol. 4, pp. 94-95).

First, it is noted that, pursuant to La.C.E. art.
801(D)(3)(b), a statement is not hearsay if it is offered against
a party and is a statement by a declarant while participating in a
conspiracy to commit a crime or civil wrong and in furtherance of
the objective of the conspiracy, provided that a prima facie case
of conspiracy is established. See also, State v. Dupree, 377 So.2d
328, 330 (La. 1979). Moreover, as discussed above, the Court of
Appeals found the testimony was admissible under the res gestae
exception to the hearsay rule. Therefore, Howard's contention that
his right to due process was violated by the admission of hearsay
testimony to establish a conspiracy is meritless.

Next, Howard argues that none of the witnesses actually saw
Howard and Jones speaking to each other, so there is no direct
evidence of a conspiracy between them. However, the officers and
the CI stated that Kicker told the officers and the CI that he had
spoken to Howard, Officer Holston testified that she saw Howard and
Kicker Jones speaking. Moreover, the sequence of events and the

16

circumstances of the transaction indicate Kicker and Howard had spoken and that, together, they provided the officers with cocaine.

In the similar case of State v. Daniels, 607 So.2d 620, 624 (La. App. 2d Cir. 1992), the court stated that "the correct focus of the inquiry should not be on the fact that a conversation occurred, but on the precise manner in which the transaction occurred. It is the direct testimonial evidence of the undercover officer which establishes the action of both men from which the jury might find the existence of an agreement to distribute crack cocaine." In Daniels, an undercover officer joined the conspirators and said he wanted to buy crack; without saying anything, the defendant produced two rocks and gave them to an unidentified person (co-conspirator) who then offered them to the officer. The court found that, although the defendant and his unidentified co-conspirator did not actually speak to one another, a jury could infer from defendant's silence that they each knew precisely what was expected of him by the other, such that oral communication between the two was unnecessary. The court concluded there was circumstantial evidence from which a trier of fact could find the existence of an agreement, or conspiracy, to sell crack to the undercover officer.

Therefore, there is sufficient evidence in the circumstances of the transaction and sequence of events to support Howard's conviction for conspiracy to distribute crack cocaine.

Since Howard has not shown there was an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence, this ground for relief is meritless.

Grounds 4 & 5 - Prosecutorial Misconduct

Howard next argues that prosecutorial misconduct occurred when (1) the prosecutor intimidated a potential defense witness with threats of prosecution to dissuade him from testifying, (2) the prosecutor vouched for the credibility of the state's witness, and (3) the prosecutor improperly commented on Howard's failure to present witnesses to testify in violation of the Sixth Amendment right to a fair trial.

The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension. Prosecutorial misbehavior, alone, does not constitute a wrong of constitutional dimension and does not require a new trial. Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940 (1982). Even in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, a new trial is required only when the tainted evidence was material to the case. The materiality requirement implicitly recognizes that the misconduct's effect on the trial, not the

blameworthiness of the prosecutor, is the crucial inquiry for due process purposes.  Smith, 455 U.S. at 220 n.10, 102 S.Ct. at 947 n.10.

1.

The Sixth Amendment guarantees a criminal defendant the right to present witnesses to establish his defense without fear of retaliation against the witness by the government.  In addition, the Fifth Amendment protects the defendant from improper governmental interference with his defense.  Thus, substantial governmental interference with a defense witness' choice to testify may violate the due process rights of the defendant.  U.S. v. Bieganowski, 313 F.3d 264, 291 (5th Cir. 2002), cert. den., 538 U.S. 1014, 123 S.Ct. 1956 (2003).  It violates due process for a trial judge or a prosecutor to threaten criminal consequences for a potential defense witness who is willing to testify for the defendant at trial without a good-faith, objective basis to support the threat, assuming that the threat actually intimidates the witness from offering exculpatory testimony.  Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351 (1972).  However, a prosecutor is always entitled to attempt to avert perjury and to punish criminal conduct.  Bieganowski, 313 F.3d at 292.

Howard contends the prosecutor told Kicker Jones that if Jones testified for Howard, Jones would also be prosecuted and face a life sentence as a multiple offender if convicted.  Howard contends

the prosecutor's tactics intimidated Jones into not testifying. Howard attempts to show that Jones' testimony would have been exculpatory by pointing to an affidavit from Jones in which Jones states that he has never agreed or conspired with Howard to do anything (Doc. 27, Vol. 6, p. 69).[1]  Howard also points out that the charges against Jones were dropped (Doc. 27, Vol. 6, p. 70).

As stated above, the prosecutor is entitled to punish criminal conduct.  The evidence presented in Howard's case indicated there was an objective evidentiary basis on which to prosecute Jones. Therefore, the prosecutor was entitled to threaten Jones with prosecution for his participation in the offense for which Howard was convicted.

Therefore, Howard has not shown that the prosecutor violated Howard's right to due process by threatening Jones with prosecution.  Since Howard has not shown there was an unreasonable application of clearly established federal law, this ground for relief is meritless.

2.

Howard also argues the prosecutor improperly vouched for the credibility of the State witnesses during closing argument.

A prosecutor may not express his personal opinion as to the credibility of witnesses or his own belief as to a defendant's

---

[1] According to Howard, Jones is deceased and cannot confirm Howard's assertions.

guilt.  United States v. Casel, 995 F.2d 1299, 1309 (5th Cir.), cert. den., 114 U.S. 1308, 114 S.Ct. 1308 (1994).  Also U.S. v. Bermea, 30 F.3d 1539, 1563 (5th Cir. 1994), cert. den., 513 U.S. 1156, 115 S.Ct. 1113 and 514 U.S. 1097, 115 S.Ct. 1825 (1995). However, the prosecutor in this case did not personally vouch for the credibility of his witnesses, but merely argued why the jury should find them credible (Doc. 27, Vol. 5, pp. 40-41).  It is not erroneous or improper for the prosecutor, during closing argument, to ask the jury to believe the evidence presented at trial which supports the state's case.  Since the prosecutor's closing argument reflects only proper arguments as to the weight of the evidence, this ground for relief is meritless.

3.

Howard contends it was improper for the prosecutor to comment on Howard's failure to present witnesses to testify in violation of Howard's Sixth Amendment right to a fair trial.

The prosecutor did not comment on Howard's failure to call defense witnesses.  Instead, he pointed out the lack of evidence to support the version of events presented in Howard's defense (Doc. 27, Vol. 5, pp. 51-52).  In any event, the government may comment on a defendant's failure to call witnesses to support his factual theories under both federal law, U.S. v. Bautista, 23 F.3d 726, 733 (2d Cir. 1994), cert. den., 513 U.S. 862, 115 S.Ct. 174 (1994), and cases cited therein, and Louisiana law, La.C.Cr.P. art. 774 and

21

State v. Simone, 428 So.2d 1226, 1228 (La. App. 3d Cir. 1983).

Since Howard has not shown there was an unreasonable application of clearly established federal law, this ground for relief is meritless. his ground for relief is also meritless.

Ground 6 - Habitual Offender Proceedings

Next, Howard contends the multiple offender proceedings were fundamentally unfair, in violation of the due process clause of the Fourteenth Amendment, when the trial court failed to determine whether one of the guilty pleas Howard admitted to was constitutionally obtained.  Howard alleges he was never apprised of all of his constitutional rights before entering his guilty plea on June 28, 1993.  However, Howard contends he is not collaterally attacking that guilty plea, but only asserting that the June 1993 conviction cannot now be used to enhance his sentence.  Howard essentially contends the government had the burden of proving his June 1993 guilty plea was constitutionally valid before using it to enhance his sentence.

In Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578 (2001), the Supreme Court held a collateral review petition pursuant to 28 U.S.C. § 2255 is an improper vehicle for lodging constitutional attacks on prior convictions used for sentencing enhancements.  The petitioner in Daniels argued that his sentence enhancement under the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e), was unconstitutional in part because it was

22

based on prior guilty pleas that were not knowing and voluntary. The Supreme Court rejected that claim, finding it was improper to allow a collateral attack on prior final convictions in a recidivism proceeding,[2] citing Parke v. Raley, 506 U.S. 20, 29, 113 S.Ct. 517, 523 (1992)(finding that Boykin's direct review of a conviction allegedly based upon an uninformed guilty plea should not be imported into the context of revisiting the question of the validity of prior, final guilty pleas in a separate recidivism proceeding because that would improperly ignore the presumption of regularity that attaches to final judgments).

The Supreme Court extended the holding in Daniels to Section 2254 habeas cases, in Lackawanna County District Attorney v. Coss, 532 U.S. 394, 121 S.Ct. 1567, 1570 (2001).  Therefore, once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under Section 2254 on the ground that the prior conviction was unconstitutionally obtained.[3]  Lackawanna

---

[2] The Daniels court held the sole exception pertains to a prior conviction obtained in violation of the right to counsel

[3] There are two exceptions to the above general rule, neither of which appears to be applicable to Howard's case.  One

County District Attorney, 532 U.S. at 403-404, 121 S.Ct. at 1570.

In the case at bar, the government was entitled to rely on the finality of Howard's June 1993 conviction and use it in Howard's habitual offender proceeding.  Therefore, the government did not have the burden of proving, at the habitual offender proceeding, that Howard had been properly Boykinized when he entered a guilty plea in June 1993.

Howard further argues that the habitual offender hearing held on November 5, 2003 was fundamentally unfair.  Howard contends that, because he had admitted two of his prior felonies in court in June 2003, the prosecutor only had to submit the portion of the June 2003 trial transcript in which Howard admitted his prior convictions for aggravated battery and guilty plea for possession

---

exception is with respect to habeas petitions challenging an enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment.  The second exception might lie where, through no fault of his own, there was no channel of review actually available to petitioner through which he might have timely challenged his prior conviction. Lackawanna County District Attorney, 532 U.S. at 405-406, 121 S.Ct. at 1575.  Neither of these exceptions are applicable in this case.

Also, in Steverson v. Summers, 258 F.3d 520 (6th Cir. 2001), citing Maleng v. Cook, 490 U.S. 488, 109 S.Ct. 1923 (1989), the court pointed out that it lacked subject matter jurisdiction to review the Section 2254 habeas petition attacking prior state felony convictions that were used to enhance the current federal sentence because the state sentences had *fully* expired, so the petitioner was no longer "in custody" on the state convictions for purposes of Section 2254.  See also, Pleasant v. Texas, 134 F.3d 1256 (5th Cir. 1998); Smith v. Cain, 2010 WL 5476798 (E.D.La. 2010).

with intent to distribute cocaine.   However, Howard contends neither the trial judge nor his attorney advised him that he could plead the Fifth Amendment right against self-incrimination when questioned as to prior offenses at trial, and did not advise him about the effect his admissions would have on his habitual offender proceeding.

Howard appears to assume that he would not have been sentenced as a habitual offender if he had not admitted his prior felonies. However, as Howard points out, La.R.S. 15:5429.1(D)(3) states that a defendant shall be sentenced as a multiple offender *when the judge finds that he has been convicted of a prior felony or felonies, or if* the defendant acknowledges or confesses in open court that he has been so convicted.   Thus, if Howard had not admitted his prior felonies, the prosecutor would simply have proven them and the outcome of Howard's habitual offender proceeding would have been the same.

Since Howard has not shown there was an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence, this ground for relief is meritless.

Ground 7 - Jury Instructions

Howard contends the trial judge violated Howard's due process right to a fair trial when he failed to sequester the jurors or instruct the jurors, when they retired during the arguing of

objections, lunch breaks, and end of trial for the day, that they should refrain from discussing the trial or reading or listening to any media accounts of the trial.

The Constitution does not require that jurors be completely unaware of the facts and issues to be tried. Andrews, 21 F.3d at 632, citing Black, 962 F.2d at 409. A habeas petitioner must show that the trial atmosphere was "utterly corrupted by press coverage." Andrews v. Collins, 21 F.3d 612, 632 (5th Cir. 1994), cert. den., 513 U.S. 1114, 115 S.Ct. 908 (1995), citing Dobbert v. Florida, 432 U.S. 282, 302, 97 S.Ct. 2290, 2303 (1977).

In Louisiana, the trial judge has discretion to decide whether or not to sequester a jury in a non-capital case. C.Cr.P. 791(C). The purpose of sequestering jurors is to protect them from outside influence and from basing their verdict upon anything other than evidence developed at trial. State v. Williams, 445 So.2d 1171, 1176 (La. 1984), citing State v. Marchand, 362 So.2d 1090 (La.1978).

Although the record does not indicate that the trial judge instructed the jury not to read or listen to any news reports and not to discuss the case with others, that is an issue of state procedural law. Howard has not alleged or shown that his trial atmosphere was utterly corrupted by press coverage or that his trial was rendered fundamentally unfair by any discussion or misconduct by the jurors during jury recesses. Therefore, Howard

has not demonstrated a constitutional claim for habeas relief.

Since Howard has not shown there was an unreasonable application of clearly established federal law, this ground for relief is meritless.

Ground 8 - Ineffective Assistance of Counsel

Finally, Howard contends he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, Howard contends his trial counsel failed to investigate the alleged conspiracy to distribute cocaine by failing to interview and secure Kicker Jones as a defense witness. Howard contends Jones would have testified that he sold the officers two rocks of cocaine that he possessed, that he never had an agreement with Howard to sell any drugs, that he never sold drugs for Howard, and that Howard did not have any knowledge that Jones was going to sell drugs to the undercover officers.

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on

27

the defense).  The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein.  Also, Jones v. Cain, 227 F.3d 228 (5th Cir. 2000), and cases cited therein.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993), citing Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 1052, 2066 (1984).  However, bare allegations do not suffice.  A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.  Nelson, 989 F.2d at 850, citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).  Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.  Graves v.

<u>Cockrell</u>, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. den., 124 S.Ct. 2160 (U.S. 2004), citing <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978).  Also, <u>Boyd v. Estelle</u>, 662 F.2d 388, 390 (5th Cir. 1981).  Where the only evidence of a missing witness's testimony is from the defendant, the Court views claims of ineffective assistance with great caution.  <u>Sayre v. Anderson</u>, 238 F.3d 631, 636 (5th Cir. 2001), citing <u>Lockhart v. McCotter</u>, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987).  Unless a petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice.  <u>Sayre</u>, 238 F.3d at 636.

Howard submitted an affidavit from Jones in which Jones states only that he never agreed or conspired with Howard to "do anything" (Doc. 27, Vol. 6, p. 69).  Jones' affidavit does not show that Jones never sold drugs for Howard or that Howard did not know Jones was going to sell cocaine to the undercover officers.  Moreover, even if Jones had testified as Howard contends he would have, Howard cannot show a reasonable probability that Jones' testimony would have changed the outcome of the trial, since the two undercover officers and the confidential informant all testified that Jones' statements to them indicated he was discussing and setting up the drug transaction with Howard.

29

Moreover, Howard has not shown that Jones would have testified at his trial even if his attorney had called him as a witness, given the fact that Jones was given a plea bargain in which charges against him were dropped, and had apparently been told by the prosecutor that he would be charged as a co-conspirator if he testified for the defense.

Howard also contends his trial counsel was ineffective for failing to object to the hearsay testimony offered by the State's witnesses as to what Jones told them. As discussed above, that testimony was not hearsay and was admissible. Therefore, Howard's trial attorney was not ineffective for failing to object to it.

Finally, Howard complains generally of his trial attorney's cross-examination of the State's witnesses and his "lack of preparation" of the defense witnesses. However, Howard has not alleged or shown specifically what his attorney could have done differently that would have led to a different result at trial. It is noted that the record is replete with objections by defense counsel for which the jury was recessed and arguments were made, and that Howard cross-examined the State's witnesses extensively.

Therefore, Howard has not carried his burden of proving that his counsel erred and that he had ineffective assistance of counsel. This ground for relief is meritless.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that

Howard's petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue

or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the _____ day of April 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE